IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH BROWN,** | : | **CASE  NO. 1:03-CR-0507** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **VICKI GIGLIOTTI,** | : | |
| **STEPHANIE DUMAS, and** | : | |
| **JANINE M. SHEPLER,** | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Before the court are Defendants Gigiliotti and Shepler's (hereinafter "the Department Defendants") motion for summary judgment (Doc. 237) and Defendant Dumas's motion for summary judgment (Doc. 240).  The parties have briefed the issues, and the matter is ripe for disposition.  For the reasons that follow, the court will grant the Department Defendants' motion and Defendant Dumas's motion.

## I.        Background

### A.        Factual

Plaintiff, Keith Brown[1] brought this action *pro se* pursuant to 42 U.S.C. § 1983, asserting that the deliberate indifference of prison officials to his serious medical needs amounted to a violation of his rights under the Eighth Amendment.  The background of the instant case is extensive and well known to the

---

[1]Plaintiff is an inmate currently incarcerated at the State Correctional Institution at Fayette.

parties.[2]  Thus, the court will not recite the facts in depth.  The following facts are relevant at the outset of this memorandum.

In August 2002, while incarcerated at the State Correctional Institution at Waymart ("SCI-Waymart"), Plaintiff broke his left ankle while state corrections officers were attempting to breakup an altercation between Plaintiff and another prisoner.  Because of the severity of the fracture, Plaintiff had surgery on his ankle.  Five screws and a plate were attached to Plaintiff's bones to stabilize them and assist with the healing process.  Plaintiff's ankle was placed in a nonweightbearing cast.  While Plaintiff's ankle was still in a nonweightbearing cast, Plaintiff was transferred from SCI-Waymart to the Long Term Segregated Housing Unit at SCI-Pittsburgh.

### B.   Procedural

Plaintiff filed his Complaint on March 24, 2003, naming seven defendants: Raymond Colleran, Joan Delie, Vicki Gigliotti, Donald Fiske, Stephanie Dumas, Concepto Flores, and Thomas Gammill.  On May 21, 2003, the court granted Plaintiff leave to amend his Complaint.  Plaintiff filed his Amended Complaint on June 16, 2003, adding Janine M. Shepler as a defendant.  On June 30, 2003, Defendants Colleran, Delie, Fiske, Gigliotti, and Shepler filed a motion to dismiss.  On July 2, 2003, Defendant Flores filed a motion to dismiss.  On July 9, 2003, Defendants Dumas and Gammill filed a motion to dismiss.

This court's December 4, 2003 order granted in part and denied in part Defendants' motions to dismiss.  (Doc. 99.)  Specifically, the court dismissed all claims against Defendants Colleran, Delie, Fiske, Flores, and Gammill.  (*Id.*)  Additionally, the court dismissed all claims against Defendants Gigliotti and Shepler

---

[2]Currently there are 276 docket entries.

in their official capacities. (*Id*.) The court denied the motion to dismiss claims against Defendants Gigliotti and Shepler in their personal capacity and the motion to dismiss claims against Defendant Dumas. (*Id*.) The court's order stated that "[t]he sole claims remaining in this action are Plaintiff's claims under the Eighth Amendment against Defendants Gigiliotti and Shepler in their personal capacities and against Defendant Dumas." (*Id*.)

   The Department Defendants filed a motion for summary judgment on May 4, 2004 and Defendant Dumas filed a motion for summary judgment on May 6, 2005. On June 28, 2005, Plaintiff filed responses to Defendant Dumas's motion and to the Department Defendants' motion. Defendant Dumas filed a reply brief on July 17, 2005 and Plaintiff filed a sur-reply brief in response on July 20, 2005.[3]

## II.  <u>Legal Standard: Summary Judgment</u>

   Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a

---

[3]Before the court is Plaintiff's "Reply Brief in Opposition to Defendant, Stephanie Dumas, PA, Support for Summary Judgment." (Doc. 271.) Local Rule 7.7 provides that a reply brief may be filed by the moving party after service of the respondent's brief; however, no further briefs may be filed without leave of court. Plaintiff has not requested leave of court to file his sur-reply brief, accordingly, the court will strike Plaintiff's sur-reply brief.

verdict for the non-moving party. *Id.* at 249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985); *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

        Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**        **Discussion**

    **A.**   **Eighth Amendment Standard**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.[4]  To state a claim under the Eighth Amendment for denial of medical care, the plaintiff must at a minimum show that the defendants were deliberately indifferent to a serious medical need. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  The deliberate indifference standard has two elements: "First, [the] plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of [the] defendant's denial was sufficiently serious. Additionally, the plaintiff must make a 'subjective' showing that [the] defendant acted with 'a sufficiently culpable state of mind.' " *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Wilson*, 501 U.S. at 298).

A serious medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Deliberate indifference has been defined as constituting the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (internal citations omitted).  The Third Circuit has found deliberate indifference in instances where a doctor "insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).  In addition, "intentionally denying or

---

[4]The Eighth Amendment applies to states via the Due Process Clause of the Fourteenth Amendment.

delaying access to medical care or intentionally interfering with the treatment once prescribed" may constitute deliberate indifference. *Estelle* 429 U.S. at 104-05.

However, the fact that a physician has been negligent in diagnosing or treating a medical condition does not constitute an Eighth Amendment claim. *Estelle*, 429 U.S. at 104 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). It is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Additionally, a disagreement between a plaintiff and a medical professional regarding the course of treatment does not constitute deliberate indifference. *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987); see also White, 897 F.2d at 110 ("There may, for example, be several acceptable ways to treat an illness.").

### B. **Department Defendants**

#### 1. **Defendant Gigiliotti**

Plaintiff's claim against Defendant Gigiliotti revolves around events related to Plaintiff's transfer from SCI-Waymart to SCI-Pittsburgh on September 19, 2002. Defendant Gigiliotti, during all relevant times was a nurse at SCI-Waymart. Due to the severity of Plaintiff's ankle injury, he was to be provided with a wheelchair or crutches. Plaintiff argues that Defendant Gigiliotti violated his Eighth Amendment rights when she allegedly failed to ensure that he had access to a wheelchair or crutches during his transport from SCI-Waymart to SCI-Pittsburgh.

Defendant Gigiliotti does not dispute that Plaintiff had a serious medical need that required a wheelchair or crutches. Defendant Gigiliotti asserts that she was

not deliberately indifferent to Plaintiff's serious medical need because she provided Plaintiff with a wheelchair and instructed him to remain off of his ankle.  Thus, according to Defendant Gigiliotti, there is no indication of wanton recklessness to show deliberate indifference.  For the reasons that follow, the court finds Defendant Gigiliotti's argument to be convincing.

According to Plaintiff's deposition testimony, Defendant Gigiliotti provided him with a wheelchair while he was waiting to be transferred.  (Brown Dep. at 76.)  Plaintiff testified that "the last time [Defendant Gigiliotti ] saw me, I was in the wheelchair.  I was in the wheelchair all that morning, all that day."  (*Id*. at 84.) Plaintiff also stated that Defendant Gigiliotti also told Plaintiff to remain off of his ankle.  (*Id*. at 77.)  Moreover, Plaintiff testified that he was escorted from the unit by a sergeant and not by Defendant Gigiliotti.  (*Id*.)  Plaintiff was then escorted to SCI-Pittsburgh by two sheriffs from Allegheny County.  (*Id*.)

According to Plaintiff, during his transport to SCI-Pittsburgh he did not have access to a wheelchair or crutches.  (*Id*. at 82.)  Plaintiff informed the sheriffs of his need for a wheelchair or crutches; however, the sheriffs did not provide Plaintiff with either.  (*Id*. at 85.)  Plaintiff testified that upon his arrival at SCI-Pittsburgh he did not tell the correction officers on duty of his need for a wheelchair. (*Id*.) According to Plaintiff, "[i]t was not my–that is not my duty to [inform the correction officers].  It was [Defendant Gigiliotti's ] duty to provide me with that."  (*Id*. at 86.) As a result of not having access to a wheelchair, Plaintiff allegedly had to walk bearing weight upon his injured ankle.

Thus, Plaintiff's complaint against Defendant Gigiliotti is not that she failed to provide him with a wheelchair while he was under her care; rather, Plaintiff's

complaint is that Defendant Gigliotti should have ensured that he had a wheelchair during his transport.  Plaintiff alleges that prison regulations required Defendant Gigiliotti to escort him to the transporting vehicle and make sure that a wheelchair accompanied him during his transport; however, Plaintiff provides no evidence of such a regulation.  Moreover, the court finds that the undisputed actions of Defendant Gigiliotti indicate that she intended for Plaintiff to have access to a wheelchair during the course of his transport.

　　　　"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 102.  "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness."  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  As stated, Plaintiff must show that Defendant Gigilioitti acted with a "sufficiently culpable state of mind."  *Montgomery*, 294 F.3d at 499.  Because Defendant Gigiliotti provided Plaintiff with a wheelchair the entire time he was under her care, informed him to remain off of his ankle, and saw him escorted off the unit by a sergeant in a wheelchair, the court finds that her actions were not sufficiently harmful to rise to the level of recklessness.  Moreover, in light of these facts, Plaintiff fails to establish the subjective component necessary to assert a violation of his Eighth Amendment rights. *See id.*  At most Defendant Gigliotti's actions rise to the level of negligence; however, as discussed, mere negligence does not give rise to an Eighth Amendment violation. *Estelle*, 429 U.S. at 104.  Accordingly, the court will grant the Department Defendants' motion for summary judgment with respect to Defendant Gigiliotti.

## 2.   **Defendant Shepler**

Plaintiff's claims against Defendant Shepler revolve around events related to Plaintiff's transfer to SCI-Pittsburgh.  Plaintiff alleges that Defendant Shepler violated his Eighth Amendment rights when she failed to ensure that Plaintiff was provided with a wheelchair or crutches upon his arrival at SCI-Pittsburgh.  As stated, due to Plaintiff's ankle injury, he was to be provided with a wheelchair or crutches.  Defendant Shepler does not dispute that Plaintiff had a serious medical need; rather, Defendant Shepler asserts that she was not deliberately indifferent to his medical needs.  For the reasons that follow the court finds Defendant Shepler's argument to be convincing.

Defendant Shepler was the triage nurse on duty at SCI-Pittsburgh on the night Plaintiff was transferred from SCI-Waymart to SCI-Pittsburgh.  (Department Defs.' Statement of Material Facts ¶¶ 27-28.)  The triage unit is a brief stop between reception area and the medical area, and the triage nurse is responsible for assessing medical emergencies.  (*Id.* ¶¶ 29-30.)  Additionally, the triage nurse does not escort inmates from the incoming van or to the medical department area.[5]  (*Id.* ¶ 31.)  Defendant Shepler saw Plaintiff briefly to determine if Plaintiff was an "emergency."[6]

---

[5]In response to Department Defendants' Statement of Material Fact 31, Plaintiff states that "Defendant [Shepler] is playin[g] games with [sic] see Exhibit E at p.2, to number 3 [sic] this is frivolous." (Pl.'s Statement of Material Facts ¶ 31.)  While Plaintiff alleges that the statement is frivolous, Plaintiff does not dispute the facts asserted.  Moreover, the court finds nothing in Plaintiff's exhibits indicating that the statement of material fact is frivolous.  Accordingly, the court accepts the Department Defendants' Statement of Material Fact 31.

[6]In response to the Department Defendants' Statement of Material Fact 28, Plaintiff asserts that Defendant Shepler knew that Plaintiff "was no emergency because I was a transfer from [W]aymart and if she would of thought that I was [sic] emergency than she would of [k]new the whole situation[.] But she [sic] hidin[g] the truth with stupidity [sic] her story [d]on't make any [sense] . . . ."  Plaintiff fails to

(continued...)

(*Id*. ¶ 28.)  Plaintiff was not classified as a medical emergency.  (*Id*. ¶ 29.)  Plaintiff was admitted by the medical ward nurse and not the triage nurse, Defendant Shepler.[7] (*Id*. ¶ 35.)  Thus, Defendant Shepler had a very limited interaction with Plaintiff.

According to Plaintiff he "told everyone in the hospital" at SCI-Pittsburgh that he needed a wheelchair. (Brown Dep. at 91.)  When asked why he chose to sue Defendant Shepler, Plaintiff responded it was because she was "who I seen when I first came in."  (*Id*. at 94.)  However, the fact that Defendant Shepler was the first SCI-Pittsburgh medical personnel Plaintiff interacted with is simply not enough to base an Eighth Amendment violation upon.

Plaintiff alleges that Defendant Shepler should have provided him with a wheelchair.[8]  According to Plaintiff's allegations, he spoke with Defendant Shepler

---

[6](...continued)
support his allegation with any evidence.  It is undisputed that Defendant Shepler was, at the relevant time, a triage nurse.  The court accepts Defendant Shepler's characterization of the triage nurse's duties: assessing medical emergencies.  (*See* Department Defs.' Resp. To Pl.'s Third Set of Interroggs. ¶ 3.)

[7]In response to Department Defendants' Statement of Material Fact 35, Plaintiff appears to dispute Defendant Shepler's account of events.  Specifically, Plaintiff states that "Defendant has everything mix[ed] up she said arrive at [SCI-]Waymart when I'm talking about returing to [SCI-Pittsburgh]."  The court notes that Defendant Shepler's response to Plaintiff's interrogatories is somewhat confusing (*see* Department Defs.' Resp. to Pl.'s Third Set of Interroggs. ¶ 3); however Plaintiff does not dispute that he was admitted by the Medical Ward Nurse and not by Defendant Shepler.  Accordingly, the court accepts Department Defendants' Statement of Material Fact 35.

[8]Plaintiff also alleges that he was discharged from the infirmary without seeing a doctor and placed in the Long Term Segregation Unit.  During his time in the Long Term Segregation Unit Plaintiff alleges that he was not able to shower, was not able to exercise, and had to walk on his casted leg. Plaintiff alleges that "he had to be force[d] for over 40 day[s] to walked on his [casted] ankle that he was order[d] not to no [sic] shower [sic] no exercise."  (Pl.'s Br. in Opp'n to Department Defs.' Motion for Summ. J. 5; *see also* Affidavit of Aaron Williams (Doc. 262), Affidavit of Michael Edwards (Doc. 261), and Affidavit of Anthony Butler (Doc. 260)).  Plaintiff places responsibility upon Defendant Shepler for a litany of alleged wrongs.  However, Plaintiff was seen by numerous prison medical personnel after he was initially seen by Defendant Shepler.  (*See* Brown Dep. 11-12, 24.)  The court notes that it will not examine Defendant Shepler's actions for the purposes of liability under the Eighth Amendment beyond her

(continued...)

and told her that he was to be provided with a wheelchair and that Defendant Shepler acknowledged that he was to be in a wheel chair.  (Brown Dep. at 87.)  In response, Defendant Shepler provides a sworn affidavit indicating that she is unable to recall whether Plaintiff was brought in a wheelchair or not.   (Department Defs.' Resp. to Pl.'s Fourth Set of Interroggs. ¶ 5.)

It is well established that "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' " *Estelle*, 429 U.S. at 105; *See also Farmer v. Brennan,* 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").  Put simply, the issue before the court is whether the failure of a triage nurse who is not the admitting nurse, but only responsible for assessing individuals to determine if they are an emergency, to provide an individual with a wheelchair meets the subjective component of a "sufficiently culpable state of mind" to qualify for an Eighth Amendment violation.  The court finds that it does not.

Defendant Shepler's brief interaction with Plaintiff was for the limited purpose of determining whether Plaintiff presented a medical emergency.  Defendant Shepler, as per the ambit of her duties, determined that Plaintiff was not a medical emergency.  Plaintiff was subsequently admitted to the medical unit by the medical ward nurse.  Based upon these facts, no reasonable juror could find that Defendant

---

[8](...continued)
responsibilities as a triage nurse.

11

Shepler acted with a "sufficiently culpable state of mind" to violate Plaintiff's Eighth Amendment rights.  At most Defendant Shepler's actions qualify as negligence; however, as discussed, mere negligence does not qualify as an Eighth Amendment violation.  *Estelle*, 429 U.S. at 104.  Accordingly, the court will grant the Department Defendants' motion for summary judgment with respect to Defendant Shepler.

### B.   Defendant Dumas

Plaintiff's allegation against Defendant Dumas centers around the subsequent care he received after sustaining the injury to his ankle.  Specifically, Plaintiff alleges that Defendant Dumas violated his Eighth Amendment rights when she removed his nonweightbearing cast and failed to provide him with a weightbearing cast.

At the time of the stated events, Defendant Dumas was a physician's assistant at SCI-Pittsburgh.  Defendant Dumas's duties included the removal of dressings, bandages, and casts.  (Dumas Aff. ¶ 5.)  Defendant Dumas was not trained or experienced in the placement of new casts, and the placement of new casts was not within the ambit of her duties.  (*Id.*)

As stated, Plaintiff was transferred from SCI-Waymart to SCI-Pittsburgh on September 19, 2002.  At the time of Plaintiff's transfer, he was in a nonweightbearing cast.  Medical personnel from SCI-Waymart recommended that Plaintiff was to be provided with a weightbearing cast upon the removal of his nonweightbearing cast.  Plaintiff alleges that Dr. Jason, the physician who performed

the surgery, indicated that Plaintiff was to receive a weightbearing cast after the nonweightbearing cast was removed.[9]

According to Plaintiff's medical records, on September 13, 2002, Plaintiff was seen by Dr. Bekele at SCI-Waymart for a follow-up examination.  Dr. Bekele's report stated that Plaintiff was "somewhat noncompliant, weightbearing on the cast."  (Brown Dep., Ex. F at 9.)  The examination indicated that Plaintiff's incision had "healed nicely" and there was "no drainage or sign of infection."  (*Id*.)  Dr. Bekele's report also recommended that Plaintiff receive a weightbearing cast after the removal of the nonweightbearing cast.  (*Id*.)

On September 27, 2002, Plaintiff was seen by Dr. Gehl, SCI-Pittsburgh's orthopaedic specialist.  (Brown Dep., Ex. F at 14.)  Dr. Gehl was responsible for the treatment and follow-up of all orthopaedic patients at SCI-Pittsburgh.  (Dumas Aff. ¶ 10.)  All orders pertaining to the treatment of orthopaedic patients were issued by Dr. Gehl.  (*Id*.)  Dr. Gehl provided that Plaintiff was due for a follow up consultation during the first week of October 2002.  Plaintiff was again seen by Dr. Gehl on October 10, 2002.  Dr. Gehl's examination notes stated that Plaintiff was "now walking full weight bearing."  (Brown Dep., Ex. F at 16.)  Dr. Gehl's stated plan was to "[g]et new x-rays."  (*Id*.)  Plaintiff, in his statement of material facts attempts to dispute this; however, the medical record speaks for itself.  Moreover, Plaintiff does not provide any evidence to the contrary.

An x-ray was performed on Plaintiff's ankle on October 14, 2002.  The x-ray indicated that there was no evidence of infection, the ankle mortise remained

---

[9]Plaintiff fails to provide any evidence that Dr. Jason ever provided such an order.  However, there is evidence that other medical staff at SCI-Waymart recommended that Plaintiff be placed in a weightbearing cast upon the removal of the nonweightbearing cast.

symmetric, and there was no soft tissue swelling.  (*Id*., Ex. F at 17.)  There is no indication that Dr. Gehl ordered Plaintiff to be provided with a weightbearing cast upon the removal of his nonweightbearing cast.

On October 30, 2002, Defendant Dumas removed Plaintiff's nonweightbearing cast.  Defendant Dumas did not replace the nonweightbearing cast with a weightbearing cast.  According to Defendant Dumas, Dr. Gehl provided her with a verbal order to remove Plaintiff's nonweightbearing cast and he did not order the replacement with a weightbearing cast.  (Dumas Aff. ¶ 7.)  Moreover, Defendant Dumas states that she was not trained or experienced in the placement of casts.[10] (*Id.* ¶ 5.)

About one week after his cast was removed, Plaintiff requested a weightbearing cast from Dr. Flores.  (Brown Dep. at 56.)  Plaintiff also allegedly complained about the fact that he was not provided with a weightbearing cast to the following SCI-Pittsburgh medical personnel: Dr. Swierccewski; Dr. Ginhereau; Samuel Watterson, a physical therapist; unnamed staff on sick call; and unnamed nurses.  (*Id*. at 58-61.)  However, in spite of Plaintiff's numerous complaints and requests for a weightbearing cast, he was never provided with a weightbearing cast.

Plaintiff alleges that Defendant Dumas violated his Eighth Amendment rights because she failed to carry out Dr. Jason's medical order for a weightbearing cast upon removal of his original cast.  In opposition, Defendant Dumas asserts: (1) that no in-force, valid order from the physician responsible for Plaintiff's orthopaedic

---

[10]Plaintiff contests this fact, asserting that "in order for you to be train [sic] to remove [a cast] you have to be train [sic] to put one on [sic] she has no licence for this field."  (Pl.'s Statement of Uncontested Facts ¶ 45.)  Plaintiff provides no evidence to support his assertion.  The court will not adopt Plaintiff's speculation about the necessary training of a physician's assistant.

treatment existed; (2) that even if such an ordered existed Defendant Dumas was not aware of it or that she did not have subjective knowledge that disregarding the order posed a substantial risk of serious harm; and (3) that if such an order existed it was not Defendant Dumas's responsibility to carry out the order.[11]   The court finds Defendant Dumas's arguments to be convincing for the following reasons.

Plaintiff's reliance on the alleged order by Dr. Jason and the subsequent recommendations from medical personnel at SCI-Waymart is flawed.  Plaintiff was transferred from SCI-Waymart to SCI-Pittsburgh.  Dr. Gehl was responsible for the treatment and follow-up of all orthopaedic patients at SCI-Pittsburgh.  (Dumas Aff. ¶ 10.)  All orders pertaining to the treatment of orthopaedic patients were issued by Dr. Gehl.  (*Id*.)  Thus, Plaintiff was under the care of Dr. Gehl, and not under the care of Dr. Jason or any other medical personnel from SCI-Waymart.  Dr. Gehl was responsible for ordering the removal of Plaintiff's cast and would have also been responsible for ordering a weightbearing cast for Plaintiff.

Plaintiff does not contend that such an order from Dr. Gehl existed.[12] Even if Plaintiff were to make such an assertion, there is no evidence that such an order existed.  During the weeks leading up to Plaintiff's cast removal, he was seen on numerous occasions by Dr. Gehl.  At no point in the medical records is there an order by Dr. Gehl indicating that Plaintiff was to be provided with a weightbearing

---

[11]In the alternative, Defendant Dumas asserts that at best Plaintiff has shown the existence of a disagreement as to the choice or course of medical treatment.  Because the court finds Defendant Dumas's first arguments to be convincing the court need not address this argument.

[12]Plaintiff states that Defendant Dumas has failed to provide an affidavit from Dr. Gehl stating that no order to provide Plaintiff with a weightbearing cast was in place.  Plaintiff misplaces his burden upon Defendant Dumas.  Plaintiff does not dispute that he was under the care of Dr. Gehl.  It is Plaintiff's burden to show that such an order from Dr. Gehl existed.

cast.  Moreover, Defendant Dumas, in a sworn affidavit, states that Dr. Gehl did not order Plaintiff to be provided with a weightbearing cast.  (Dumas Aff. ¶ 7.)

Brown's deposition testimony further supports Defendant Dumas's assertion that no order was in place to provide Plaintiff with a weightbearing cast. During the removal of his cast, Plaintiff allegedly told Defendant Dumas that he required a weightbearing cast.  Plaintiff alleges that Defendant Dumas responded that "she is only doing what she was instructed to do, remove the cast."  (Brown Dep. ¶ 49.)  Additionally, as stated, after Plaintiff's original cast was removed he complained to numerous doctors and prison medical personnel about the failure to provide him with a weightbearing cast; however, at no time was Plaintiff provided with a weightbearing cast.  (Brown Dep. at 56-61.)  While not dispositive of the issue, such facts create a strong inference that there was no order by Dr. Gehl was in place and that there was no medical need for Plaintiff to be provided with a weightbearing cast.

The court finds that based upon the evidence, a reasonable fact finder could not find that there was an order by the physician responsible for Plaintiff's orthopaedic needs to provide Plaintiff with a weightbearing cast.  Defendant Dumas, a physician's assistant, was following the orders of Plaintiff's treating physician, and those orders did not state that Defendant Dumas or anyone else was to provide Plaintiff with a weightbearing cast.

Moreover, based on the evidence before the court, there is no material fact as to whether Plaintiff's medical need for a weightbearing cast was "so obvious," *Monmouth County Corr. Inst.,* 834 F.2d at 347, that Defendant Dumas's failure to provide one constitutes an Eighth Amendment violation.  As provided by Plaintiff's medical records, prior to having his cast removed Plaintiff was bearing full

16

weight on his leg and x-rays indicated no evidence of infection, the ankle mortise remained symmetric, and there was no soft tissue swelling.  (*Id.*, Ex. F at 17.) Moreover, Plaintiff complained to numerous medical personnel about his alleged need for a weightbearing cast, yet he was never provided with one.  In light of Plaintiff's medical records and the fact that there was no order from Plaintiff's treating physician to provide Plaintiff with a weightbearing cast, the alleged need for Plaintiff to be provided with a weightbearing cast would not have been evident to Defendant Dumas.

Finally, as stated, Defendant Dumas was not qualified or trained to place a new cast on Plaintiff.  Put simply, it was not in the ambit of Defendant Dumas's responsibilities to provide Plaintiff with a weightbearing cast.  Thus, even if there existed a standing order for a weightbearing cast, Defendant Dumas could not have provided Plaintiff with a weightbearing cast.

In light of the facts that there was no order from Dr. Gehl, Plaintiff's treating orthopedic physician, stating that Plaintiff was to be provided with a weightbearing cast, that the alleged need was not so evident as to be apparent to Defendant Dumas, and that the placement of casts was not within the ambit of Defendant Dumas's duties, the court finds that there exists no material dispute as to whether Defendant Dumas violated Plaintiff's Eighth Amendment rights.  No reasonable juror could conclude, in light of the evidence, that Defendant Dumas violated Plaintiff's Eighth Amendment rights.  Accordingly, the court will grant Defendant Dumas's motion for summary judgment.

### C.   State Tort Law Claims

17

In the court's December 4, 2003 memorandum and order, the court addressed Plaintiff's state tort law claims.  Specifically, the court stated that

> [a]t various points throughout Plaintiff's amended complaint, Plaintiff mentions 'state tort law' without reference to any specific state cause of action.  These allegations are insufficient to bring any state law issues before the Court.  Accordingly, the Court will only address Plaintiff's § 1983 claim.

(Doc. 99 at 2 n.2.)  Moreover, the court's December 4, 2003 order provided that "[t]he sole claims remaining in this action are Plaintiff's claims under the Eighth Amendment against Defendants Gigiliotti and Shepler in their personal capacities and against Defendant Dumas.

On December 8, 2003, Plaintiff filed a motion for leave to file an amended complaint.  However, Plaintiff failed to file a brief in support of his motion.  The court, in its December 30, 2003 order (Doc. 112), stated that Plaintiff's motion was deemed to have been withdrawn.

Thus, Plaintiff has had ample opportunity to amend his Complaint and present any state law tort claims that he may have; however, Plaintiff has failed to do so.  The court notes that Plaintiff's Statement of Material Facts states that "per this court['s] December 4, 2003 order, the sole remaining claim against the [Defendants] is an Eighth Amendment claim of deliberate indifference . . . ."  (*Id.* ¶ 7.)  Plaintiff makes no mention of a state law claim in his Statement of Material Facts.  In accordance with the court's December 4, 2003 memorandum and order, the court

18

finds that Plaintiff has not articulated a cognizable state tort law claim, as such there exists no issue for the court to grant summary judgment upon.[13] [14]

## IV.        <u>Conclusion</u>

In conclusion the court notes that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  As stated, the court finds that based upon the evidence presented there is no genuine issue of fact as to whether any of the remaining Defendants acted with deliberate indifference to Plaintiff's alleged serious medical needs.  Thus, in accordance with the foregoing discussion, the court will grant Defendants' summary judgment motions.  With respect to Defendant Dumas, the court finds that she has

---

[13]Defendant Dumas asserts that no state tort claims exist.  In the alternative, she argues that summary judgment should be granted because Plaintiff has failed to provide medical expert testimony, as required by Pennsylvania law.  *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003).  Because the court finds that no state tort law claims exist, the court need not address Defendant Dumas's alternative argument.

[14]Currently pending before the court is Plaintiff's "Motion Requesting the Court to Approve for Expert Witness to Enter the SCI-Fayette Prison to Take X-Ray of Plaintiff Left Ankle."  (Doc. 272.) Because the court finds that there are no existing state law claims, the court will deem said document to be moot.  Additionally, Plaintiff has filed a Motion Requesting Information on the Delay of Summary Judgment Decision and Other Motion[s] Filed."  (Doc. 275.)  Specifically, Plaintiff inquires about the status of the pending motion for summary judgment and a request to serve a subpoena upon the Allegheny Sheriff's Department.  In light of the instant memorandum and order, the court will deem this motion to be moot.  Finally, before the court are several letters by Plaintiff.  These letters seek various forms of relief; however, a letter is not the appropriate means to communicate with the court.  If Plaintiff wishes to communicate with the court he should do so by a proper motion.

not violated Plaintiff's Eighth Amendment rights.  With respect to the Department

Defendants, Gigiliotti and Shepler, the court finds that they did not violate Plaintiff's

Eighth Amendment rights in their individual capacties.  Moreover, the court finds that

based upon its December 4, 2003 memorandum and order there were no existing

state tort law claims for the court to decide.[15]  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 14, 2005.

---

[15]The court notes that Plaintiff, in his opposition brief alleges that his confinement has exercerbated his alleged mental illness.  The issues surrounding Plaintiff's mental health are not related to the Defendants in the instant action.  Plaintiff sued the Defendants in the instant action based upon his allegations that they violated his Eighth Amendment rights with respect to the care of his ankle.  Moreover, the issues of confinement and its relation to Plaintiff's mental health are not part of Plaintiff's Amended Complaint.  Finally, the court's December 4, 2003 order provided that "[t]he sole claims remaining in this action are Plaintiff's claims under the Eighth Amendment against Defendants Gigiliotti and Shepler in their personal capacities and against Defendant Dumas."  The court did not provide for any additional claims that related to Plaintiff's mental health.  While the court is not indifferent to Plaintiff's claims related to his mental health, they are simply not before the court.  Thus, the court will not address these issues.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


**KEITH BROWN,**                          :          **CASE  NO. 1:03-CR-0507**
                                          :
          **Plaintiff**                   :
                                          :
    **v.**                              :
                                          :
**VICKI GIGLIOTTI,**                      :
**STEPHANIE DUMAS, and**                  :
**JANINE M. SHEPLER,**                    :
                                          :
       **Defendants**                :


# O R D E R


In accordance with the foregoing memorandum of law **IT IS HEREBY ORDERED THAT:**

    1)Plaintiff's sur-reply brief (Doc. 271) is **STRICKEN**.

    2) Defendants Gigiliotti and Shepler's motion for summary judgment (Doc. 237) is **GRANTED**.

    3) Defendant Dumas's motion for summary judgment (Doc. 240) is **GRANTED**.

    4) Plaintiff's "Motion Requesting the Court to Approve for Expert Witness to Enter the SCI-Fayette Prison to Take X-Ray of Plaintiff Left Ankle." (Doc. 272) is **MOOT**.

    5) Plaintiff 's "Motion Requesting Information on the Delay of Summary Judgment Decision and Other Motion[s] Filed" (Doc. 275) is **MOOT**.

6) The clerk of court shall enter judgment in favor of Defendants Gigiliotti, Shepler, and Dumas and against Plaintiff and close the file.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 14, 2005.